UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LEON BURNS,

       Plaintiff,                              Case No. 11-13815
                                                 Honorable Thomas L. Ludington

v.

CITY OF SAGINAW,

       Defendant.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Leon Burns is an African-American police officer employed by the City of Saginaw (the City). In December 2009, Burns filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), alleging that the City suspended him for three days because of his race. Then, in August 2011, Burns filed this lawsuit. In his complaint, he alleges that the City tolerated and condoned a hostile work environment where he was discriminated against because he was African American, and that the City retaliated against him when he "complained of acts of racial discrimination and harassment in the workplace." Pl.'s Compl. ¶¶ 27–37, ECF No. 1. Burns's complaint pleads violations of both Title VII of the Civil Rights Act of 1964 and Michigan's Elliot Larsen Civil Rights Act.

Based on the following, the City's motion for summary judgment will be granted.

**I**

Burns was hired as a police officer by the City in May 1999. After graduating from the academy, he started out as a patrol officer, then he worked as a juvenile intervention officer, and finally he became a community police officer. At the time of Burns's hire, the City's Chief of

Police was African American.  Then, in 2005, the City hired Gerald Cliff, a Caucasian man, to become the Chief of Police.  According to Burns, this is when things started to go awry.

In December 2008, while he was off duty, Burns was plowing snow from the streets around his neighborhood.  As presented by the parties, the facts of the incident are less than clear, but it appears that Burns and one of his neighbors got into a heated altercation.  The neighbor became upset because he believed that Burns was plowing snow into his yard. According to Burns, the confrontation escalated when the neighbor referred to him as a "black bitch" or a "stupid black motherfucker."  Whether or not this is true, the neighbor eventually filed a police report against Burns alleging that Burns struck him with the snow plow.  An internal investigation was initiated by the City, headed by Police Sergeant Anjanette Tuer.  Tuer interviewed Burns, recommended discipline, and Burns received verbal counseling as a result of the incident.

The fact that Tuer interviewed Burns and recommended discipline is significant because of something that occurred in March 2009.  On March 3, 2009, the City was found liable for a large sum of money in a race-discrimination lawsuit.  *See McDole v. City of Saginaw*, No. 07-13697, 2010 WL 458472, at *1 (E.D. Mich. Feb. 8, 2010).  The plaintiff in that case was another African-American police officer employed by the City.  Burns claims that on the same day the verdict was rendered, Tuer called him on his cellphone.  According to Burns, Tuer wanted him to defend her and say "that she wasn't a racist."  Pl.'s Resp. 4 (citation omitted), ECF No. 73. Burns alleges that when he refused to assist her, Tuer said "I fucking can't stand you fucking black people, you will fucking remember this day."  *Id*. (citation omitted).

After he received the verbal counseling because of the snow-plow incident, Burns submitted a complaint to the City Manager and Personnel Department on April 8, 2009.  He

expressed his concern that the verbal counseling he received constituted discrimination by the City. According to Burns, the City never investigated this April 8, 2009, complaint. After the complaint was made, however, the snow-plow incident was referred to the Michigan State Police, which initiated a criminal investigation. The County prosecutor eventually issued a warrant for Burns's arrest on the charge of reckless driving. Burns subsequently pled to the lesser charge of careless driving. *See* Burns Dep. 73, *attached as* Def.'s Mot. Ex. A.

In August 2009, various police officers working for the City raised complaints about Burns's attendance. Accordingly, Lieutenant Angela Elgie began to investigate Burns's work habits. At the conclusion of her investigation, Lieutenant Elgie determined that Burns had violated several departmental policies. As a result, on November 17, 2009, Burns was suspended for three days without pay. Burns claims that he was told by another officer, Dan Kuhn, that Chief Cliff said "something to the effect that . . . any nigger that stood up against him, would live to regret it until the day Chief Cliff fired him." Burns Dep. 202, *attached as* Pl.'s Resp. Ex. 1. However, the Civil Service Commission later overturned Burns's three-day suspension after concluding that the City imposed discipline more than 90 days after it should have known of the infractions.[1]

As a result of these incidents, and the alleged statements of Chief Cliff, Burns initiated an intake questionnaire with the EEOC on December 9, 2009. *See* Pl.'s Resp. Ex. 11. In the section entitled "What happened to you that you believe was discriminatory," Burns indicated that his discrimination claims related to two dates: April 8, 2009, and November 17, 2009. *Id.* at 4. Burns indicated that on April 8 he "wrote a two page letter to the Saginaw City Manager, Darnell Early, about the partial, unfair and discriminatory abuse going on at the Saginaw City Police

---

[1] The parties do not explain the source of this "90-day rule" requiring any discipline to be imposed within that period of time.

- 3 -

Department." *Id.* As to November 17, Burns claimed that was the day he "was suspended for three (3) work days." *Id.* When asked to describe why "these actions were discriminatory," Burns wrote as follows:

> I'm being discriminated against because of my race. There are only four officers assigned to the Community Policing program, I'm the only black officer. I feel I'm being unduly ostracized, harassed and held more stringently to the rules (1) because I'm black and (2) because I've written letters to the City Manager (Darnell Early) and the City Personnel Director Dennis Jordan about the partial, unfair and discriminatory abuse going on at the City of Saginaw's Police Department. Garnished my check.

*Id.*

Burns received a confirmation letter from the EEOC on December 22, 2009, which included an official Form 5 Charge of Discrimination. Burns completed the charge of discrimination and submitted it on December 29, 2009. On the form, he indicated that he believed he was retaliated against because of his race. *See* Pl.'s Resp. Ex. 11, at 8. In a section providing "Date(s) discrimination took place," Burns asserted that April 8, 2009, was the earliest date of discrimination and that November 17, 2009, was the latest. *Id.* He did not check the associated box entitled "Continuing Action." *Id.* In the section concerning the particulars of the discriminatory conduct, Burns set forth his side of the story:

> I began employment with the above-named employer in May 1999, and am currently employed as a Community Police Officer.
>
> On April 8, 2009, I complained about discrimination to the City Manager.
>
> On November 17, 2009, I was suspended allegedly for violating department rules.
>
> Meanwhile, two white individuals accused of the same had their investigations dropped.
>
> I can only conclude I was suspended because of my race, black, and in retaliation for complaining about discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id*.  The EEOC charge form contained nothing else but Burns's signature.

Also in December 2009, Matthew MacComber complained to the City Manager's office that Burns had fraudulently issued him a traffic ticket.  Mr. MacComber advised the City that he was not driving his personal vehicle on the day in question; rather, he was driving a vehicle owned by the State of Michigan.  Another investigation was initiated regarding Burns. Meanwhile, Burns filed an additional complaint of discrimination on January 4, 2010. Eventually, when the City concluded that Burns had issued a bogus ticket, Chief Cliff recommended that he be dismissed.  The City Manager agreed.  Burns's employment was terminated on February 17, 2010.

Like his previous suspension, Burns's discharge was overturned by the Civil Service Commission.  The Commission again concluded that the City did not impose discipline until after the "90-day rule" had lapsed.  As such, the commission ordered that Burns be returned to work, and he was.  Again, the source of the "90-day rule" is not explained by the parties.

However, Burns was not returned to his previous position as a Community Police Officer.  Instead, he was placed on road patrol.  Although he earned more money per hour, Burns's working hours were different.  He eventually interviewed for the Community Police Officer position in 2011 and reclaimed the post.

Finally, Burns applied for a position with the Saginaw County Auto Theft Team (SCATT) in 2011.  He did not receive an interview, and he alleges that a Caucasian officer with only two years of road experience was selected for the position instead.  Based on all of these events, Burns filed a complaint on August 31, 2011.  The City filed its motion for summary judgment on July 31, 2013.

## II

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The focus must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). All justifiable inferences from the evidence must be drawn in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' " *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Although Burns brings claims under both Title VII and the Elliott Larsen Act, courts "review claims of alleged race discrimination brought under . . . the Elliot-Larsen Act under the same standards as claims of race discrimination brought under Title VII of the Civil Rights Act of 1964." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (collecting cases).

## III

The City contends that Burns's claims should be dismissed for basically two reasons. First, it argues that many of his claims should be dismissed because Burns did not include them in his EEOC charge of discrimination. As to the claims that were included in his EEOC charge, the City argues that Burns cannot satisfy his prima facie burden.

## A

Before reaching the substance of the City's motion for summary judgment, the Court will address one of Burns's filings. His response to the City's motion was due on September 13,

2013.  On September 11, Burns filed an ex-parte motion seeking leave to exceed the Local Rule limiting any responsive brief to 25 pages and 14-point font.  Burns suggested that he could not respond to the City's motion with only 25 pages.  The Court disagreed, denied the request, and held Burns to the parameters established by the Local Rules.  Accordingly, on September 13, Burns filed a response brief that covers 24 pages.

Then, without leave, Burns filed a supplemental brief on September 18, 2013, in opposition to the City's motion for summary judgment.  Burns indicates that the supplemental brief is based on "a recent decision by the Sixth Circuit . . . ."  Pl.'s Supp. Br. 1, ECF No. 74.  However, this recent authority was available well before Burns's responsive brief was due.  *See* Pl.'s Supp. Br. Ex. 1, at 1 (establishing that the "recent decision" was "Decided and Filed: August 13, 2013.").  Moreover, the point Burns raises in the supplemental brief (that including a charge in an EEOC complaint is no longer considered a jurisdictional requirement) is nothing new.  *See Hill v. Nicholson*, 383 F. App'x 503 (6th Cir. 2010) (recognizing that including claims in an EEOC charge is *not* a jurisdictional requirement in the context of Title VII).  Burns's supplemental filing, ECF No. 74, is untimely and adds little; it will be disregarded.

**B**

Turning now to the issues that are before the Court.  The City alleges that a number of Burns's claims were never presented to the EEOC and therefore should be dismissed for failure to exhaust administrative remedies.

In designating the procedure for challenging prohibited employment discrimination under Title VII, Congress gave initial enforcement responsibility to the EEOC.  "Thus, an employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts."  *Younis v.*

*Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(e)(1)). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). As a general rule, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge."[2] *Younis*, 610 F.3d at 361 (citations omitted). This rule serves the "dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Id*. at 362 (citation omitted).

Of course, "because aggrieved employees—and not attorneys—usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id*. at 362 (citation omitted). In essence, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

As noted above, Burns completed an intake questionnaire with the EEOC on December 9, 2009. After reviewing the intake questionnaire, the EEOC supplied Burns with an official Charge of Discrimination form. Pl.'s Resp. Ex. 11, at 1. Burns completed and submitted that Charge of Discrimination on December 29, 2009. In the EEOC charge, Burns indicated that discrimination took place on April 8 and November 17, 2009. *Id*. at 8. Although he could have checked a box to indicate that the discrimination constituted "Continuing Action," Burns did not

---

[2] Although the Sixth Circuit previously held that this requirement (including a claim in an EEOC charge before pursuing that claim in a lawsuit) is jurisdictional, *see Ang v. The Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991), that holding has been abrogated by more recent cases. *See Hill v. Nicholson*, 383 F. App'x 503 (6th Cir. 2010) (recognizing that the requirement is *not* jurisdictional in the context of Title VII). However, while the omission of a claim from an EEOC charge does not deprive this Court of jurisdiction over that claim, "allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010).

do so. *Id.* In describing the discriminatory conduct, Burns established that he "complained about discrimination" on April 8, 2009, and "was suspended allegedly for violating department rules" on November 17, 2009. *Id.* Based on those two discrete incidents, Burns could "only conclude [he] was suspended because of [his] race, black, and in retaliation for complaining about discrimination . . . ." *Id.*

The City claims that the Charge of Discrimination Burns filed with the EEOC on December 29, 2009, only identified and sought relief for two discrete incidents of discrimination. Accordingly, the City argues that Burns has not exhausted the administrative process as to his hostile-work-environment claim or his claims related to the denial of a promotional opportunity in January 2010, his February 2010 discharge, and improper reassignment following his reinstatement in September 2010. Each issue is addressed in turn.

**1**

Burns's EEOC charge does not support a claim of hostile work environment; he only identified two incidents of alleged discrimination within a seven-month period. Because he did not present a hostile-work-environment claim to the EEOC, Burns has not sufficiently exhausted the claim and summary judgment on the City's behalf is proper.

In order to establish a claim of hostile work environment, Burns "must present evidence of harassment that unreasonably interferes with his work performance and creates an objectively intimidating, hostile, or offensive work environment." *Younis*, 610 F.3d at 362 (internal quotation marks and brackets omitted) (quoting *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008)). Thus, "the inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion." *Younis*, 610 F.3d at 362. Indeed, discrete acts of discrimination will not "support a subsequent,

uncharged claim of hostile work environment 'unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.' "  *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994)).

A claim of hostile work environment cannot be reasonably inferred from Burns's EEOC charge.  In the charge, Burns identified two discrete incidents of discrimination.  He did not report to the EEOC that the discrimination was "continuing," and he established that the "Latest" date of discrimination was November 17, 2009, over one month before the charge was submitted.  The April 8 and November 17, 2009 incidents, as described by Burns, are "insufficient to establish a hostile-work-environment claim for purposes of exhaustion."  *See Younis*, 610 F.3d at 362.

Burns relies upon the following line from his EEOC intake questionnaire to support his claim that his EEOC charge contemplated a hostile-work-environment claim: "I feel I'm being unduly ostracized, harassed and held to more stringently to the rules . . . ."  Pl.'s Resp. 15.  He buttresses the argument with a district court case from the Southern District of Ohio, *McFarland v. Breads of the World, LLC*, No. 09-929, 2011 WL 801815 (S.D. Ohio, Feb. 1, 2011), where a plaintiff failed to charge a hostile-work-environment claim but was nevertheless allowed to pursue the claim.  This was because, in his EEOC charge, the plaintiff did indicate that he suffered from "*continuing* ridicule and harassment . . . ."  *Id.* at *4 (emphasis in original).  On these facts, the court concluded that a hostile-work-environment claim could be reasonably inferred.  *Id.*

Notably, Burns does not address the fact that the sentence he relies upon here was included in his intake questionnaire and not the EEOC charge.  Unlike the plaintiff in *McFarland*, who represented in his EEOC charge that discrimination was "continuing," Burns

represented in his EEOC charge that discrimination was *not* "continuing action." *See* Pl.'s Resp.

Ex. 11, at 8. Although Burns did indicate he was "being harassed" in his intake questionnaire,

the Supreme Court has established that a complete EEOC intake questionnaire is not an EEOC

charge:

> Unlike EEOC Form 5, the Intake Questionnaire is not labeled a "Charge of
> Discrimination." In fact the wording of the questionnaire suggests the opposite:
> that the form's purpose is to facilitate "pre-charge filing counseling" and to enable
> the agency to determine whether it has jurisdiction over "potential charges."
> There might be instances where the indicated discrimination is so clear or
> pervasive that the agency could infer from the allegations themselves that action
> is requested and required, but the agency is not required to treat every completed
> Intake Questionnaire as a charge.

*Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 405 (2008) (internal citations omitted). And

although the language contained in Burns's intake questionnaire is not identical to that analyzed

in *Holowecki*, the message is the same: the questionnaire's purpose is to assess whether an

EEOC charge would be appropriate. *See* Pl.'s Resp. Ex. 11, at 6 ("The purpose of this

questionnaire is to solicit information about claims of employment discrimination, determine

whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as

appropriate."). So, although Burns attempts to rely on information outside of his EEOC charge,

the information contained in the charge itself is what is considered to determine whether he has

exhausted his claims.[3] *See Francois v. Miami Dade Cnty., Port of Miami*, 432 F. App'x 819, 822

---

[3] It is possible for an intake questionnaire to function as a charge in certain circumstances. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 405 (2008) ("There might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required, but the agency is not required to treat every completed Intake Questionnaire as a charge."). However, where a claimant does not manifest an intent to activate the administrative process by filing the intake questionnaire, that questionnaire cannot act as a formal charge. *See Bost v. Fed. Exp. Corp.*, 372 F.3d 1233, 1241 (11th Cir. 2004) (refusing to construe an intake questionnaire as a formal charge where the claimant "clearly understood that the intake questionnaire was not a charge because he later filed a timely charge."). Likewise, Burns knew his initial questionnaire was not a formal charge because he later filed an official charge.

(11th Cir. 2011) ("as a general matter an intake questionnaire is *not* intended to function as a charge.") (emphasis in original)

A hostile-work-environment claim is not "reasonably inferred from the facts alleged in [Burns's] charge." *Younis*, 610 F.3d at 362 (citation omitted). Because his EEOC charge cannot be reasonably construed as presenting a claim of hostile work environment, Burns has not exhausted the administrative process concerning that claim. Summary judgment will be granted on this issue.

**2**

Next, the City challenges other claims that it alleges were not included in Burns's EEOC charge. The City argues that subsequent to filing his EEOC charge in December 2009, Burns "alleged that: (1) he was denied a promotional opportunity in January 2010; (2) he was terminated in February 2010; and (3) he was improperly reassigned following his reinstatement in September 2010." Def.'s Mot. 12. The City argues that although Burns "is now alleging that the above employment actions were racially motivated, he did not file an EEOC Charge of Discrimination in relation to any of the above adverse employment actions, nor did he amend his prior Charge of Discrimination. As such . . . [Burns] may not now pursue these claims." *Id*.

The City is correct that in *Sherman v. Chrysler Corp.*, 47 F. App'x 716 (6th Cir. 2002), the Sixth Circuit recognized that "retaliation claims based on acts subsequent to the filing of [an EEOC] charge, however, were never the subject of an EEOC charge, and therefore were not exhausted." *Id*. at 721 (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)). But *Sherman* is an unpublished disposition, and as such, it carries less weight than published Sixth Circuit decisions. And the Sixth Circuit established in *Strouss v. Michigan Dept. of Corrections*, 250 F.3d 336 (6th Cir. 2001), a published opinion, that "retaliation claims based

on conduct that occurs after the filing of the EEOC charge can be reasonably expected to grow out of the charge[,]" *id*. at 342 (citation omitted), and can therefore be pursued without being first pled in an EEOC charge. *See also Scott v. Eastman Chemical Co.*, 275 F. App'x 466, 474 (6th Cir. 2008) ("Courts have held that retaliation growing out of the EEOC charge is reasonably foreseeable and therefore a plaintiff is not required to file yet another EEOC charge.").

So, although Burns never presented his claims concerning 2010 conduct to the EEOC, because they occurred subsequent to the filing of his EEOC charge alleging discriminatory retaliation, Burns can pursue the claims here.

**3**

The conclusion is different for the discriminatory conduct Burns alleges occurred before he filed his EEOC complaint. Burns indicates that he suffered discrimination in March 2009 when Tuer recommended he be disciplined for the snow-plow incident, in May 2009 when Chief Cliff recommended that criminal charges be filed, in October 2009 when he was subjected to an internal affairs investigation, and on December 4, 2009, when he was "subjected to yet another Internal Affairs Investigation." *See* Pl.'s Resp. 5–8. Notably, Burns alleges that all of these incidents occurred before he filed his EEOC charge on December 29, 2009.

But none of these incidents are referenced in Burns's EEOC charge. *See* Pl.'s Resp. Ex. 11, at 8. And the Sixth Circuit has been explicit that "retaliation claims based on conduct that occurred *before* the filing of the EEOC charge must be included in that charge." *Strouss*, 250 F.3d at 342 (citation omitted) (emphasis in original). Accordingly, summary judgment is appropriate concerning the complained of conduct that occurred before December 29, 2009, but that was not included in Burns's EEOC charge.

**C**

Burns remaining claims concern six discrete incidents of discrimination—two of which he included in his EEOC charge and four that could be reasonably expected to result from the filing of that charge: the City's failure to address his April 8, 2009 complaint of discrimination; his November 17, 2009 suspension; the City's failure to address his January 4, 2010 complaint of discrimination; his February 18, 2010 discharge; the City's failure to reinstate him to his former position when he returned to work; and that he was not interviewed for a SCATT position. The City argues that each of these claims is without merit. Burns contends to the contrary.

Title VII prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Likewise, the Elliot Larsen Act provides that "an employer shall not fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment compensation, or a term, condition or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390–91 (6th Cir. 2008) (internal quotation marks, brackets, and ellipsis omitted) (quoting Mich. Comp. Laws § 37.2202(1)(a)). Again, claims under the Elliot Larsen Act and Title VII are assessed using the same standards. *See Quanex Corp.*, 191 F.3d at 658.

A plaintiff alleging discrimination may satisfy his burden of establishing such discrimination either by presenting direct evidence of discriminatory actions by the defendant or by showing the existence of circumstantial evidence that creates an inference of discrimination. *Younis*, 610 F.3d at 363. Direct evidence, if believed, requires no inferences from the factfinder to conclude that unlawful discrimination was at least a "motivating factor" in the employer's actions. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc); *see*

- 14 -

*also Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008) (citation omitted).  Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, "but does allow a factfinder to draw a reasonable inference that discrimination occurred."  *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).

## 1

Burns alleges that he has advanced direct evidence of discrimination.  He argues that there "is direct evidence of racial slurs by decision makers—Tuer and Cliff."  Pl.'s Resp. 19.  According to Burns, "Tuer was involved with two internal affairs investigations regarding [Burns] after she told him she couldn't stand 'black people' and [Burns] would 'fucking remember this day.' "  *Id*.  As for Chief Cliff, Burns indicates that he "was told by another Officer that Chief Cliff said any nigger that stood up to him would live to regret it until the day the Chief fired him."  *Id*.  In addition, Burns argues that he was told "he was terminated because, 'he keeps complaining, EEOC Complaint, terminate him.' "  *Id*. at 19–20.

The Sixth Circuit has established that the utterance of racial slurs by decision makers can constitute direct evidence of discrimination.  *See Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012) (" 'racist comments' constitute direct evidence of discriminatory intent").  Tuer's comments, however, are not relevant here; Burns did not identify Tuer's internal investigations in his EEOC charge and so summary judgment will be granted on those claims.  But Chief Cliff's alleged statement may constitute direct evidence because it is clear from the face of Burns's February 17, 2010 discipline notice that it was Chief Cliff who recommended that Burns be terminated.  *See* Pl.'s Resp. Ex. 13, at 1.

However, Chief Cliff's alleged statement is the product of double hearsay: first his alleged statement, and then Officer Kuhn's alleged reproduction of that alleged statement to Burns.  And while the statement made by Chief Cliff would not be offered for the truth of the matter asserted—instead the statement would be relevant to show his racial attitude—the same cannot be said for Officer Kuhn's retelling.  Indeed, Officer Kuhn's assertion that Chief Cliff used racial slurs would be offered specifically for the truth of the matter asserted, and thus would constitute inadmissible hearsay under Federal Rule of Evidence 801.  Burns offers no exception to the hearsay rule covering Officer Kuhn's retelling of Chief Cliff's statement, and "[h]earsay evidence may not be considered on summary judgment."  *Jacklkyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999) (citing *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)).

Although the issue could be remedied with testimony from Officer Kuhn, Burns does not offer deposition testimony or an affidavit from Officer Kuhn substantiating his claim that Officer Kuhn heard Chief Cliff use racial slurs (despite having taken Officer Kuhn's deposition).  Thus, Chief Cliff's statement is inadmissible, and as to the racial slurs, Burns has not offered admissible direct evidence of discrimination.

Likewise, Burns's testimony that he was discharged because of his EEOC complaints is not direct evidence of discrimination.  Burns testified that he was again told by another officer that "because of [his] persistence of writing letters to complain," the decision was made to terminate his employment.  *See* Burns Dep. 113, *attached as* Pl.'s Resp. Ex. 1.  But according to Burns, "either the Chief [Cliff] or Darnell Earley said, no, make it a termination" because of the letters; he did not "know who elevated it."  *Id.*  Once again, without deposition testimony or an

affidavit from the other officer, this is double hearsay with no exception providing for its consideration.

Burns has not demonstrated direct evidence of discrimination, and thus his claims will be analyzed under the familiar *McDonnel Douglas* burden-shifting framework applicable to claims based on circumstantial evidence.

**2**

Here, on all six of the claims that are properly before this Court, Burns has not satisfied his prima facie case of discrimination. Summary judgment is appropriate.

To establish a claim of discrimination indirectly through circumstantial evidence, a plaintiff must demonstrate: "(1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he." *Younis*, 610 F.3d at 363 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If a plaintiff successfully satisfies his prima facie burden, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the employer does so, the burden then shifts back to the plaintiff to demonstrate that the employer's "stated reason . . . was in fact pretext." *Id*. at 804.

Burns does not offer any evidence to satisfy the fourth element of his prima facie burden—that similarly situated employees were treated more favorably than he was. Instead, Burns argues that he does not have to: "both federal and state cases have held the fourth element is satisfied by evidence giving rise to an inference of unlawful discrimination." Pl.'s Resp. 21. But neither case that Burns relies upon for this proposition provides any assistance.

He first refers to *Hazle v. Ford Motor Co.*, 628 N.W.2d 515 (Mich. 2001), a Michigan case. The case established that under Michigan law, and in the context of the fourth prima-facie element, a plaintiff "has no obligation to prove" that she "was better qualified than [an] employee who received [a] promotion" she sought. *Id*. at 524. *Hazle* did not establish, however, that no similarly-situated employee need be identified in order to satisfy a plaintiff's prima-facie burden when establishing discrimination through circumstantial evidence.

The other case Burns relies on, *Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2007), is also distinguishable. *Blair* addressed the necessity—in the context of "cases involving a reduction-in-force"—for a plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id*. at 529 (citation omitted). Burns suggests this language *replaced* the fourth prima-facie element: "In *Blair*, the Sixth Circuit held that the plaintiff satisfied the fourth element by presenting circumstantial evidence of age discrimination . . . even though . . . the statements . . . were not made by the decision maker." Pl.'s Resp. 21–22 (citation omitted). *Blair*, however, emphasized that *additional* evidence is required in reduction-in-force cases, beyond that "the employer gave the job to a younger employee[,]" *Blair*, 505 F.3d at 529, not that the fourth element can be satisfied solely by this additional evidence.

Indeed, the Sixth Circuit has made clear that the fourth element of the prima facie test requires a plaintiff to establish that "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself [are] similar in all of the relevant aspects." *Jones v. City of Franklin*, 468 F. App'x 557, 562 (6th Cir. 2012) (citation omitted).

As to his two allegations concerning the City's failure to investigate his claims of discrimination—claims he made on April 8, 2009, and January 4, 2010—Burns merely alleges

that "it is the policy of the Department to investigate all claims of discrimination."  Pl.'s Resp.

10.  Burns does not offer any evidence of similarly situated individuals that filed complaints that

*were* investigated.  Thus, he has not satisfied his prima facie burden as to these two claims, and

summary judgment is proper.

  As to his November 17, 2009 suspension, Burns alleges that "[t]here were two other

Caucasian police officers that Plaintiff learned were accused of taking days off without being

properly authorized to do so, but Chief Cliff ordered their investigations to be stopped . . . ."

Pl.'s Resp. 8.  But to be considered "similarly situated" under the fourth element, Burns must

establish that these two Caucasian officers were "similar in all of the relevant aspects."  *Jones*,

468 F. App'x at 562.  The court in *Jones* provided an example of what would constitute similarly

situated individuals:

> If a plaintiff claims to have received a harsher punishment than similarly situated
> employees, for example, one way that the plaintiff could establish a prima facie
> case would be to show that the employees with whom the plaintiff seeks to
> compare himself or herself reported to the same supervisor, were subject to the
> same standards, and "engaged in the same conduct without such differentiating or
> mitigating circumstances that would distinguish their conduct or the employer's
> treatment of them for it."

*Id*. (citing *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 393 (6th Cir. 2008)).  Burns's

bare-bone allegations—that two unidentified, Caucasian officers were not suspended after they

took days off without authorization—unaccompanied by further explanation, "are a far cry from

the specificity that the fourth element requires."  *Jones*, 468 F. App'x at 562.  Summary

judgment is also appropriate on this claim.

  Burns does not offer any evidence of similarly situated individuals concerning his

February 2010 termination, Pl.'s Resp. 10–11, or the City's failure to reinstate his position when

he returned to work, *id*. at 11.  Accordingly, he has not satisfied his prima facie burden, and summary judgment is appropriate on those two claims as well.

Finally, Burns argues that he was not given an interview for a SCATT position in 2011, but that a Caucasian officer with "less than two years road patrol experience" got the job.  *Id*. at 11–12.  Here, Burns has attempted to identify a similarly-situated employee.  Despite this effort, however, summary judgment is proper on this claim, too.  Noted above, Burns must establish that he and Officer Murphy (who got the SCATT job) are "similar in all of the relevant aspects." *Jones*, 468 F. App'x at 562.  Burns does no more than indicate that he and Officer Murphy are both police officers and allege that he has more experience.  This simply is not enough, as "it is within [a] company's business judgment to treat differently-situated parties differently.  Without similarly situated parties, we cannot adjudge the intent of the employer as to retaliation." *Ladd v. Grand Trunk Western R.R., Inc.*, 552 F.3d 495, 503 (6th Cir. 2009).

Because he has not satisfied the fourth element of his prima facie case—demonstrating that he was treated differently than similarly-situated individuals—summary judgment is appropriate on all of Burns's claims.

## IV

Accordingly, it is **ORDERED** that the City's motion for summary judgment, ECF No. 61, is **GRANTED**.

It is further **ORDERED** that Burns's complaint, ECF No. 1, is **DISMISSED** with prejudice.  This is a final order and closes the case.

Dated: December 30, 2013                              s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 30, 2013.

<u>s/Tracy A. Jacobs</u>
TRACY A. JACOBS